**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00305-CMA-MEH

DAVID MENGES,

     Plaintiff,

v.

ABF FREIGHT SYSTEM, INC.,

     Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

_____

     This is a wrongful termination suit under a collective bargaining agreement ("CBA").  Plaintiff David Menges ("Plaintiff") brings a hybrid claim under the Labor Management Relations Act ("LMRA") alleging that Defendant ABF Freight System, Inc., ("Defendant"), his former employer, terminated him in violation of the CBA.  (Doc. # 28.) This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. # 48.), Plaintiff's response (Doc. # 51), and Defendant's reply.  (Doc. # 52.)  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 185(a).  For the reasons stated below, the Court grants Defendant's Motion for Summary Judgment.

# I.  BACKGROUND

## A.    Facts

Because the Court is addressing Defendant's motion for summary judgment, the Court views the facts in light most favorable to Plaintiff, the nonmovant.  Thus, reasonable inferences are drawn and factual ambiguities are resolved in his favor.

Defendant is a trucking company that consolidates and moves shipments of goods throughout the country.  It has a terminal in Denver, Colorado, at which Plaintiff was employed by Defendant as a combination checker/driver.  (Doc. # 47, Ex. 1, Part 1 at 5:21-6:19.)

Truck drivers at this location, including Plaintiff, are represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Local Union 17 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (collectively the "Union").  (Doc. # 47, Ex. 2 at 38:17-22, 89:19-24; Ex. 5, No. 1.)

As a member of the Union, Plaintiff's terms and conditions of employment, including his discharge, were governed by the parties' CBA.  The CBA consists of the National Master Freight Agreement and Western States Area Supplemental Agreements to the National Master Freight Agreement.  (Doc. # 47, Ex. 2 at 38:17-41:19.)

Under Article 46, Section 1 of the CBA, Defendant retains the right to suspend or discharge an employee with a warning notice "if the cause of such suspension or

discharge is . . . (c) Recklessness resulting in a serious accident while on duty." (Doc. # 47, Ex. 5.)

On July 31, 2007, Plaintiff had an accident with another vehicle, as he attempted to make a right-hand turn against a red traffic signal at the intersection of 112th Avenue and Irma Drive in Northglenn, Colorado. Although Plaintiff disputes the extent of damage to the vehicle he struck, the vehicle was determined to a "total loss" in terms of property damage. The driver of that vehicle was taken to the hospital in an ambulance, although he at first declined treatment. (Doc. # 47, Ex. 3, No. 3, No. 5; Ex. 4 at 76:3-9; Doc. # 51 at 3, ¶ 14.)

The police department cited Plaintiff for Failure to Yield Right-of-Way. In the accident report, the responding police officer describes the damage to both vehicles as only "slight." (Doc. # 51, Ex. A.)

Jon Tilp, the Branch Manager of the Denver Terminal at the time, arrived at the scene of the accident, took Plaintiff to receive his mandatory post-accident drug testing, and asked Plaintiff to explain what happened. Defendant then investigated the accident and determined Plaintiff's recklessness was its cause. (Doc. # 47, Ex. 2 at 37:9-10, 104:9-106:2; Ex. 1 at 5:14-20; Ex. 6; Ex. 4 at 30:23-32:10.)

One week later, on August 6, 2007, Defendant terminated Plaintiff's employment under Article 46, Section 1 of the CBA for "recklessness resulting in a serious accident." Defendant sent a letter to Plaintiff confirming his discharge. In it, Plaintiff's driving at the time of the accident is described as "negligent." (Doc. # 51, Ex. C.)

ABF based its decision to fire Plaintiff on the following facts: the other car was deemed a total loss; the other driver was taken to the hospital after the accident; Plaintiff was cited for failure to yield; and Plaintiff had received several complaints from the public about his driving in the months preceding the accident.  (Doc. # 47, Ex. 1 at 42:1-15; 46:11-17; 48:22-49:16; Ex. 4 at 30:23-32-10.)

Plaintiff's discharge was grieved by the Union, the procedure for which is addressed in the CBA.  Article 46, Section 3 of the CBA provides that protests to suspension or discharge must be made in writing within ten days to [Defendant] and if the written protest "is not resolved to the satisfaction of the parties, either party may file the case with the Multi-State Committee ("Committee") as provided in Article 45, Section 1 [of the CBA]."  (Doc. # 47, Ex. 2 at 109:16-22; Ex. 3, No. 8; Ex. 5 at 19.)

As part of the grievance procedure, Jon Tilp, Operations Manager Kurt Johnson, Plaintiff, Michael Ramos, who is a union business agent, and several union stewards engaged in a "steps meeting" at which the parties attempted to resolve the dispute regarding whether Plaintiff had been properly discharged under the terms of the CBA. During this meeting, Plaintiff was represented by at least two union stewards. Defendant rejected Plaintiff's offer, made through his union representative, to return to work as a checker on the dock and not as a driver.  (Doc. # 47, Ex. 1 at 68:22-69:23; Ex. 2 at 112:8-13, 115:13-116:6, 117:22-118:25; Ex. 4 at 33:8-17.)

Pursuant to the terms of the CBA, the Union appealed Plaintiff's discharge to the Committee, whose role in employee discipline appeals is to determine whether the

employer's decision was proper under the CBA.  The dispute over the discharge was heard by the Committee on September 18, 2007.  Plaintiff was represented by union business agent Michael Ramos, who met with Plaintiff briefly before the hearing but did not discuss strategy.  Defendant was represented by its Industrial Relations Director, Bob Wade.  (Doc. # 47, Ex. 2 at 71:11-73:16, 124:12-17, 130:9-131:4; Ex. 3, Nos. 9-11; Ex. 4 at 72:10-17; Ex. 5; Doc. # 51, Ex. D, ¶ 1).

Defendant presented its case first.  Mr. Wade introduced a packet of documents related to Plaintiff's accident and subsequent discharge.  Included in that packet were five citizen complaints about Plaintiff's driving and information regarding an earlier accident by Plaintiff, which occurred in 2005.  Plaintiff had been discharged after the 2005 accident, though he was later reinstated.  (Doc. # 47, Ex. 2 at 130:9-131:4; Ex. 8.)

There is some dispute regarding what portions of Defendant's evidence the Committee considered.  The parties do not dispute that Mr. Ramos "challenged" Defendant's evidence regarding the 2005 discharge and the citizen complaints. Defendant presents deposition testimony suggesting that Mr. Ramos' challenge was successful and the evidence of the 2005 discharge was excluded from the Committee's consideration.  Plaintiff's deposition testimony and subsequent affidavit, however, suggest that Mr. Ramos' challenge was not successful.  He states that Mr. Ramos' challenge came too late, after Defendant had already read into the record the offending evidence.  Given the procedural posture, the Court assumes for purposes of this motion that Mr. Ramos did challenge Defendant's evidence regarding the 2005 discharge and

the citizen complaints but that the challenge was not successful in that the Committee did consider Defendant's 2005 accident as well as the five citizen complaints regarding Plaintiff's driving.  (Doc. # 47, Ex. 2 at 147:5-153:20; Ex. 7 at 24:16-25:19; Ex. 4, at 57:6-59:10, 62:24-63:1; Doc. # 51, Ex. D, ¶ 4.)

Mr. Ramos then presented Plaintiff's case.  Mr. Ramos gave a fairly short presentation in which he read a statement to the Committee.  Mr. Ramos argued in his statement that Plaintiff's driving was not reckless and that Plaintiff deserved his job back.  Mr. Ramos, however, failed to highlight the termination letter, which described Plaintiff's driving as "negligent" not reckless, and he similarly ignored the police report, which described the damage to the two vehicles as only "slight" not serious.  With respect to the citizen complaints, Mr. Ramos asked Plaintiff to read aloud Plaintiff's written responses to the complaints, even though they had not discussed this strategy beforehand and despite Plaintiff's belief the responses were not well-written.  Plaintiff was also given an opportunity to directly address the Committee, which he did.  He expressed his desire to keep his job, that it was more than just a job, it was his career and that he hoped to finish his career with Defendant.  (Doc. # 47, Ex. 2 at 148:20-155:23; Ex. 4 at 62:24-63:1, 79:3-12 Doc. # 51, Ex. D, ¶¶ 3, 4.)

After each side presented its case, the Committee, comprised of an equal number of employer and union representatives, asked questions of Plaintiff and Mr. Ramos.  Plaintiff told the Committee that he was satisfied with Mr. Ramos' representation.  The Committee deliberated for approximately 15-30 minutes before

voting to uphold Plaintiff's discharge.  (Doc. # 47, Ex. 1 at 67:22-25, Ex. 4 at 59:7-10, Ex. 9; Doc. # 51, Ex. B at 80:21-81:2.)

With respect to the 2005 discharge, Defendant terminated Plaintiff in 2005 because of an accident in which Plaintiff rolled over his truck's trailer while making a left-hand turn at an intersection.  As in 2007, the Union appealed Plaintiff's discharge and Plaintiff attended a Multi-State Committee hearing.  Mr. Ramos, the same union business agent who represented Plaintiff during the 2007 proceedings, represented Plaintiff during the 2005 proceedings.  Unlike in 2007, however, Plaintiff was reinstated at the close of the 2005 proceedings.  (Doc. # 47, Ex. 2 at 63:13-66:8, 71:11-22, 72:13-74:23; Ex. 4 at 37:17-38:6, 38:7-13.)

After Plaintiff returned to work in 2005, one of Plaintiff's union stewards stated in front of other employees that he did not believe Plaintiff should been returned to work.  Plaintiff thought this comment was disloyal and asked Mr. Ramos to relieve the steward of his duties.  Six weeks passed and Mr. Ramos did nothing.  Plaintiff then complained to the union's secretary-general about Mr. Ramos.  Again, nothing happened.  (Doc. # 51, Ex. D, ¶ 2; Ex. E at 127:5-14.)

Despite all this, Plaintiff never sought to be represented by a different business agent during the 2007 proceedings.  (Doc. # 51, Ex. D, ¶ 1, Ex. E at 128:19-129:1.)

**B.    Procedural History**

Plaintiff originally filed this case in state court.  Defendant removed it to this Court on February 12, 2008, after which Plaintiff filed a Second Amended Complaint on April

25, 2008.  He brings a hybrid claim under the LMRA, alleging that Defendant fired him without cause in violation of the CBA, and that the Union breached its duty to fairly represent him during the subsequent grievance proceedings.  (*See* Doc. # 28.)

Defendant filed its Motion for Summary Judgment and supporting brief on October 30, 2008, arguing it is entitled to judgment as a matter of law because there are no genuine issues of material facts as to each of three elements necessary to sustain Plaintiff's claim.  (*See* Doc. ## 47, 48.)  Plaintiff filed a response on November 21, 2008 (Doc. # 51), and Defendant replied on December 8, 2008.  (Doc. # 52.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id*. at 670-71.  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id*. at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256.  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

### III.  ANALYSIS

Plaintiff brings a "hybrid" claim under Section 301 of LMRA.  It is hybrid in that it "combines two conceptually independent causes of action, the first against the company for breach of the contract (a standard § 301 claim) and the second against the union for breach of the duty of fair representation ["DFR"] (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee)."  *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998).

Although the claim implies two distinct causes of action, "[t]he plaintiff in a hybrid § 301/DFR action need not sue both his union and former employer in the same case . . . but in any event, the case he must prove is the same whether he sues one, the other, or both."  *Id.* at 1239 (citation and quotation marks omitted).

To prevail against Defendant, Plaintiff "must prove three elements: (1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of the [grievance] process, and; (3) A violation of the collective bargaining agreement by the company." *Id.* (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568 (1976)).  The Court addresses the elements in reverse.

### A.    Breach of CBA

The parties dispute whether Plaintiff's driving was "reckless" and whether the ensuing accident was "serious", as those terms are used in the CBA.  The meaning of those words is critical because of the CBA section in which they are found.

The CBA allows an employer to discharge an employee, without warning, for "just cause."  The CBA provides examples of behavior constituting "just cause."  Article 46, Section 1 of the CBA regards as just cause "recklessness resulting in a serious accident".

The dispute as to what these words mean is a question of intent, *i.e.*, what the parties intended when they decided upon those words.  This is a question of fact, one often resolved by evaluating the customs and past practices of a given industry.  *See Webb,* 155 F.3d at 1243 (fact-finder often interprets the terms of a labor contract by resort to the "common law of the shop"); *See also Local No. 7 United Food and Commercial Workers International Union v. King Soopers., Inc., a Division and Subsidiary of (Respectively) Dillon Companies, Inc.,* 222 F.3d 1223, 1227 (10th Cir. 2000) (in construing terms of CBA, arbitrators look to custom and practices of a particular industry.)

More importantly, given the procedural posture, it is a "genuine" issue because there is evidence sufficient on either side so "that a rational trier of fact could resolve the issue either way." *Anderson*, 477 U.S. at 248.  Defendant points to the fact that the driver of the other car was taken away in an ambulance, suggesting it was a serious accident.  Plaintiff rebuts by citing his affidavit and stating that, as he observed it, the other driver first refused the ambulance.  Plaintiff also points to the police officer's report, which identified the damage as "slight" and Defendant's letter, which referred to Plaintiff's driving as only "negligent", as evidence that he was not driving recklessly and

that the accident was not serious.  The disputed facts are also "material", because the resolution of these facts – whether it was a serious accident caused by Plaintiff's recklessness – is essential to deciding whether Defendant breached the CBA.

Despite its conclusion that there exists a genuine of material fact regarding the construction of the CBA, the Court acknowledges a principle common in the labor law context, in which courts generally will not disturb the outcome of a grievance process to which the parties have bound themselves.  *See Local No. 7 United Food and Commercial Workers International Union,* 222 F.3d at 1227; *Bell v. IML Freight, Inc.*, 589 F.2d 502, 504 (10th Cir. 1979) ("The general rule is that a fairly represented employee may not attack an arbitration decision made in the context of a collective bargaining agreement.").

Indeed, so long as the ultimate interpretation of the terms of the CBA -- typically done by an arbitrator but here by the Committee -- "draws its essence" from the CBA, that interpretation will stand.  See *Local No. 7 United Food and Commercial Workers International Union,* 222 F.3d at 1227.  This principle reflects the courts' reluctance to meddle with congressionally-enacted federal labor policy.  *Bell,* 589 F.2d at 506 ("National policy as expressed in the various labor acts can be best effectuated if the settlement means chosen by the parties are given full play.") (internal citation and quotation marks omitted).

Although Plaintiff provides no support for his conclusory argument that "[s]uffice to say that there is a difference between the deference given to an arbitration

-12-

proceeding and that given to a Committee hearing" (Doc. # 51 at 13), the Court resolves

this element in Plaintiff's favor, given the fact that here the contracted-for remedy did not

involve an arbitrator.  *See Bell*, 589 F.2d at 504 (suggesting possible difference in

treatment afforded arbitration decisions versus committee decisions).

**B.    Causal Connection**

Having established that the alleged breach of the CBA presents a genuine issue

of material fact, the Court now considers whether there is evidence of a connection

between Defendant's alleged breach of the CBA and the union's alleged breach of the

DFR.  To win on the merits of hybrid claim under the LMRA, Plaintiff must prove a

connection between the two.

At this stage, however, Plaintiff's burden is not so heavy.  He can survive

summary judgment if he presents facts, in the form of admissible evidence, that counter

those facts advanced by Defendant and that speak to a matter of consequence.

In other words, the mustering of facts must present a *genuine* not a sham issue, and

they must be *material* not inconsequential facts.  *See Anderson*, 477 U.S. at 256.

Defendant argues that "[p]laintiff admitted that he could not prove a connection

between the Union's alleged breach of its duty of fair representation and ABF's alleged

breach of the CBA." (Doc. # 47, ¶ 33.)  It is true that during his deposition Plaintiff stated

he could not prove a connection between the two.  (Doc. # 47, Ex. 2 at 191:20-192:1.)

The question was whether Plaintiff had any facts suggesting a connection between the

two alleged breaches.  Plaintiff answered "I can't prove that."

Plaintiff later withdrew from this answer.  In his response to Defendant's motion, with respect to this very question and answer, Plaintiff stated that he "is not an attorney and does not know how prove circumstantial matters."  Maybe so, but the question posed did not ask for a legal opinion.  Instead, the question asked for *facts* in support of his legal claim.  Depositions are a discovery tool designed in part to produce evidence, via sworn testimony, in support or in defense of a given claim.  *See, e.g., Schwarzer, Pasahow & Lewis, Civil Discovery and Mandatory Disclosures: A Guide to Efficient Practice* 3-3 (2d ed. 1994).

Here, Plaintiff failed to present evidence, either at his deposition or otherwise, in support of this element.  As a result, there being no material evidence in dispute regarding this element, it is the Court's duty to apply the law to the undisputed facts and decide this element.  The Court finds there is no causal connection between the union's alleged breach of the DFR and the employer's alleged breach of the CBA.

Although this finding in and of itself is sufficient to resolve the motion for summary judgment in favor of Defendant, the Court proceeds with the analysis of the DFR to demonstrate that the same outcome would result even if Plaintiff were to have prevailed at this step, i.e., that there was a causal connection between the union's alleged breach of the DFR and Defendant's breach of the CBA.

## C.    Duty of Fair Representation

"The duty of fair representation arises from a union's legal status as the sole and exclusive bargaining representative of employees' interests with their employer.

*Schwartz v. Brotherhood of Maintenance of Way Employees*, 264 F.3d 1181, 1185 (10th Cir. 2001) (citing *Webb*, 155 F.3d at 1239).  "From that right to represent all the members of a designated employment unit flows an 'obligation to serve the interests of all members.' "  *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).  "By design, the obligation stands as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law."  *Id.* (internal citations and quotation marks omitted).

"On the other hand, representing collectively a diverse constituency poses tremendous difficulties.  Even the best intentioned, most thoughtful union action will almost invariably further the interests of one employee faction at the expense of another."  *Id.* (citing *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir. 1994).  "Consequently, too stringent a duty of representation would subject the union to endless attacks from within, undermining the very purpose for the union's existence – to present a strong, unified front to employers."  *Id.*  "Thus, a sensible duty of fair representation must . . . " afford a union the flexibility it needs "to represent collectively the varied interests of its members while at the same time protecting the individual employee's legitimate claim for redress due to unjustifiable union conduct."  *Id.* (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991)).

"The duty of fair representation attempts to accomplish both goals by making a union liable to its members for conduct that is arbitrary, discriminatory, or in bad faith."  *Id.* (internal citation and quotation marks omitted).

>A union breaches its duty of fair representation if its conduct toward a member is "arbitrary, discriminatory, or in bad faith."  A union's actions are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."  A union's discriminatory conduct violates its duty of fair representation if it is "invidious."  Bad faith requires a showing of fraud, or deceitful or dishonest action.

*Id.* (citing *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993) (internal citations omitted).

Additionally, a union may breach its duty if it, in certain contexts, it acts in a "perfunctory" fashion.  *Webb*, 155 F.3d at 1240-41.  "For the Union to act in a 'perfunctory' fashion, it would have to act 'without concern or solicitude, or [give] a claim only cursory attention.' " *Hinkley v. Roadway Exp., Inc.*, 249 Fed. Appx. 13, 17 (10th Cir. 2007) (citing *Webb*, 155 F.3d at 1240)).

"To establish arbitrary or perfunctory action, [plaintiffs] must demonstrate that the Union's actions constitute more than 'mere errors in judgment,' " *Hinkley,* 249 Fed. Appx. at 17 (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976) or 'mere negligence.' " *Id.* (citing *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73 (1990); *Nelson v. Holmes Freight Lines, Inc.*, 37 F.3d 591 (10th Cir. 1994).

Drawing the line between negligence (permissible) and perfunctory (impermissible) can be difficult where the evidence is close.  *See Webb*, 155 F.3d at 1240 (refusing to draw line between negligent and  perfunctory conduct because unnecessary given weight of the evidence).

-16-

In the instant case, Plaintiff contends that the union, in the form of Mr. Ramos, breached its duty of fair representation toward Plaintiff in its handling of the 2007 grievance proceedings.  With respect to the Committee hearing, Plaintiff cites as evidence Mr. Ramos' failures regarding potentially exculpatory evidence.  First, Mr. Ramos failed to highlight the responding officer's police report, in which the damage to both vehicles was described as only "slight."  Mr. Ramos also failed to highlight the fact that Defendant's termination letter described Plaintiff's driving as "negligent" as opposed to "reckless," the word used in the CBA to describe the type of behavior constituting just cause for termination.

Plaintiff also highlights Mr. Ramos' failures regarding inculpatory evidence, arguing that Mr. Ramos failed to successfully challenge, *i.e.*, exclude from consideration, evidence that the Committee should not have been considering pursuant to the terms of the CBA.  No one disputes that at the hearing, Defendant's representative, Mr. Bob Wade, read from a packet containing citizen complaints about Plaintiff's driving and evidence of Plaintiff's 2005 accident.  Plaintiff alleges that Mr. Ramos' failure to exclude this evidence supports it claims that the union breached its DFR.  The Court disagrees.

For purposes of this motion, and on the strength of Plaintiff's affidavit, the Court assumes that the Committee considered the 2005 accident and the citizen complaints in deciding to affirm Plaintiff's termination.  It is undisputed that, on this point, the CBA essentially states that Plaintiff's driving record may be considered by the Committee

only if Defendant can show that Plaintiff was "at fault" for the accident.  Plaintiff asserts

that he was not at fault in the 2005 accident; thus, the Committee should not have

considered evidence of it at the hearing.  In addition, because the CBA makes no

mention of citizen complaints, those too should not have been discussed.

In rebuttal, Defendant attempts to discredit Plaintiff's affidavit, from which these

facts are mustered, as "self-serving."  Defendant then points out that, to be admissible

and in compliance with Rule 56(c), an affidavit must be based upon personal

knowledge.  What Defendant fails to note, however, is that Plaintiff's affidavit, in which

he in part describes what happened during the Committee hearing, is in fact based

upon Plaintiff's personal knowledge, since he was present at the hearing.

Though it is true that Plaintiff's sworn statement is disputed by the deposition

testimony of several other participants at the hearing, such as Mr. Ramos, this disputed

evidence only underscores the current procedural posture.  That is, because this case is

at the summary judgment stage, the Court cannot weigh the evidence; instead, its task

is limited to discerning whether there exists genuine issues regarding material facts.

Here, because of the conflicting evidence regarding a point central to Plaintiff's claim

about whether Ramos' representation amounted to a breach of the DFR or not, there is

clearly a disputed fact.  The question becomes, then, whether the disputed facts are

*material*?  As mentioned, a fact is material only if it is "essential to the proper disposition

of the claim."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Assuming then, for purposes of this motion, that Plaintiff's version of the facts are true, do these facts amount to a breach of the DFR?  *See Schwartz,* 264 F.3d at 1183 ("if [Plaintiff's] version of the genuine disputed facts demonstrates a breach of the [DFR], then the dispute must be material, and summary judgment cannot lie.").

Plaintiff, perhaps suspecting his evidence insufficient to satisfy the "tripartite test" – whereby a union breaches its DFR if its representation is arbitrary, discriminatory, or in bad faith – invokes in support of his claim the word "perfunctory", claiming it as the proper adjective by which this Court should evaluate the union's alleged misconduct. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 & 77 (1991) (describing tripartite test).  That is, if the union's representation of Plaintiff was "perfunctory", then Plaintiff wins.

Before evaluating Plaintiff's argument, the Court turns to the Oxford English Dictionary for guidance.  It defines perfunctory as follows:  "done merely as a matter of duty, form, or routine, and so without interest, care, or enthusiasm; carried out with a minimum of effort; formulaic, mechanical; superficial, trivial." *The Oxford English Dictionary*, 2009, *available at* http://dictionary.oed.com.

Plaintiff cites to *Webb* in support of its "perfunctory" proffer.  *Webb*, in turn, cites to the 1986 version of *Websters Third New International Dictionary (Unabridged)* for support, providing a definition similar to the one cited above.  *See Webb*, 155 F.3d at 1240 (perfunctory defined as "characterized by routine or superficiality: done merely as

a duty: CURSORY, MECHANICAL . . . lacking in interest or enthusiasm: APATHETIC, INDIFFERENT.").

Regardless of how phrased, the definition of perfunctory suggests a standard of proof lesser than arbitrary (meaning irrational), discriminatory (invidious), or bad faith (fraudulent or deceitful).  Despite *Webb*'s dutiful incantation of the word 'perfunctory,' the court there never embraced the term.  It noted that it is easy to read the Supreme Court references to perfunctory conduct "as merely expressing a concrete example of the kind of specific conduct prohibited by the tripartite standard."  *Webb*, 155 F.3d at 1240.  Moreover, the Tenth Circuit has, in a more recent decision, backed off the use of the word perfunctory.  *See Robertson v. Burlington Northern and Santa Fe Ry. Co.,* 216 Fed.Appx. 724, 727 n.2 (10th Cir. 2007) (unpublished) (expressing doubt as to whether "perfunctory" is separate grounds for DFR violation.).

Despite the confusion over the word "perfunctory," this Court is convinced that Plaintiff's version of the facts amount to, at worst, negligence, which the Tenth Circuit, following the Supreme Court, has embraced as not amounting to a breach of the DFR. *Nelson*, 37 F.3d at 594 (citing *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73 (1990)).

Moreover, although Plaintiff cites the word "perfunctory" in support of its facts, its argument seems to allege a conspiracy involving the union and Defendant, by which they sought to undermine Plaintiff at every turn in the grievance process.  (*See* Doc. # 51 at 15-16) ("either the union was working alone to get ride of [Plaintiff] or the union

was working in concert with [Defendant] to this end."). Plaintiff asks the Court to find "at least a jury question as to whether the union cleverly misguided the Committee." Without going further, the Court notes the seeming disparity between an act done in a clever fashion versus perfunctory fashion.

In support of his argument that the union acted in "perfunctory" fashion, Plaintiff attempts to parallel the facts in *Webb* with his facts, but to no avail. The Tenth Circuit in *Webb* found the evidence sufficient to allow a jury to decide whether the union breached its DFR. The *Webb* plaintiff, also a truck driver, had been discharged after getting into an accident. Although the *Webb* employer cited to the plaintiff's failure to report the accident as cause for discharge, the plaintiff suspected that was mere pretext, the real reason being retaliation for the plaintiff's union activities. The case went to trial and the jury returned a verdict in favor of the plaintiff. The defendant appealed, arguing insufficient evidence on the plaintiff's hybrid claim. *See Webb*, 155 F.3d at 1234-35, 1249.

Unlike the instant case, where there is no evidence of a conspiracy to oust Plaintiff, the evidence in *Webb* showed that the union acted egregiously, with evidence in conflict (which the jury resolved in favor of the plaintiff) regarding whether the union repeatedly lied to both the plaintiff and the committee hearing his grievance, telling them one thing and then representing the opposite. *See id* at 1236-37. For instance, there was evidence showing that the union representative in *Webb* told the plaintiff that he need not appear at the grievance hearing; then, at the hearing he represented that "Mr.

Webb was invited to be present here and apparently has chosen not to be here to testify in his own behalf." *Id.* at 1237.  The court in *Webb* found evidence sufficient for a jury finding of bad faith, not just perfunctory representation.

In the instant case, Plaintiff has not produced or cited any evidence of similar bad faith or perfunctory representation.  Instead, Plaintiff suggests that Mr. Ramos "had a motive" to help Defendant terminate Plaintiff, citing to Plaintiff's one-time request to have a union steward and Mr. Ramos himself removed in 2005.  Unfortunately for Plaintiff, beyond his own speculation about Mr. Ramos' motive, there is no evidence of this "motive."

In sum, assuming Plaintiff's version of the facts are true, however lean the evidence in support, they are still insufficient to allow a rational jury to decide whether the union breached its duty of fair representation.  This is so even when construing all doubts and inferences in his favor, as this Court must do.  Plaintiff's case simply falls short of the mark.

This is not to say that there not issues of disputed fact.  There are.  For instance, Plaintiff asserts that Mr. Ramos' objections at the Committee hearing were insufficient; Defendant claims they were successful.  The point is moot, however, given that a dispute of fact is insufficient to avoid the granting of summary judgment; the dispute must be over a "material" fact.  Plaintiff's concession that the union objected at all, regardless of its success, defeats the materiality of that fact.  In other words, a union which represents its members at grievance hearings, introduces evidence of their

behalf, and objects to the employer's inculpatory evidence, is not one acting in a

perfunctory, arbitrary, discriminatory, or bad faith manner in the discharge of its DFR.

For these reasons, the Court resolves the motion for summary judgment in favor

Defendant.

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant's Amended

Motion for Summary Judgment (Doc. # 48) is GRANTED.  Accordingly, this case

is DISMISSED WITH PREJUDICE.

It is further ORDERED that the Final Trial Preparation Conference currently

scheduled for August 24, 2009 is VACATED and the trial set to begin September 8,

2009 is also VACATED.

It is further ORDERED that Defendant shall have its costs by the filing of a

Bill of Costs with the Clerk of this Court within ten days of the entry of judgment.

DATED:  August   14  , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge